**Cynthia WELLS, as the legal Representative of her minor son, Brandon Wells, Petitioner,**

v.

**SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.**

**No. 90–1473 V.**

United States Court of Federal Claims.

June 22, 1993.

648

Curtis R. Webb, Twin Falls, ID, atty. of record, for petitioner.

Richard Schollman, Torts Branch, Civil Div., U.S. Dept. of Justice, Washington, DC, atty. of record, for respondent, with whom were attys. at the U.S. Dept. of Justice and the Asst. Atty. Gen., Civ. Div.

## OPINION

HORN, Judge.

This case comes before the United States Court of Federal Claims [1] on respondent's motion to review the decision of the special master, dated December 30, 1992, which awarded $4,956.69 in attorney's fees and costs to petitioner under The National Childhood Vaccine Compensation Program, as established by The National Childhood Vaccine Injury Act of 1986, 42 U.S.C. § 300aa–34 (1988), and as amended by several public laws, *see* 42 U.S.C.A. §§ 300aa–1 to 300aa–34 (West Supp.1993) (Vaccine Act).[2] Respondent challenges the decision of the special master on the grounds that an award of attorney's fees and costs is not authorized by the Vaccine Act when, as in the instant case, petitioner rejects the judgment entered by the special master. Respondent, however, has not challenged the amount of the fees awarded. In response, petitioner asserts that an election to accept the special master's judgment on the merits is not necessary in order to collect attorney's fees and costs. Neither party contests jurisdiction over this suit in the United States Court of Federal Claims.

After a review of the record and filings in the above-captioned case, the court finds that Special Master Laura D. Millman did not abuse her discretion when she awarded fees and costs to the petitioner.

## PROCEDURAL BACKGROUND

Cynthia Wells (Wells), on behalf of her minor son, Brandon Wells (Brandon), filed a petition for vaccine compensation in the United States Claims Court on September 26, 1990. In the petition, petitioner alleges that Brandon suffered an encephalopathy,

---

1. Following the enactment of the Court of Federal Claims Technical and Procedural Improvements Act of 1992, Pub.L. No. 102–572, the United States Claim Court was renamed the United States Court of Federal Claims. In accordance with General Order 33 issued by the United States Court of Federal Claims, the court adopted the rules of the United States Claims Court. The substance of the rules of the court are unaffected by the legislation, other than with the respect to the name change of the court, and, therefore, the name change of the rules. However, General Order 33 also indicated that if there is a conflict between the new statute and the rules, the statute will control.

2. Tit. XXI, § 2112, as added Nov. 14, 1986, Pub.L. No. 99–660, tit. III, § 311(a), 100 Stat. 3761; and amended Dec. 22, 1987, Pub.L. No. 100–203, tit. IV, §§ 4303(d)(2)(A), 4307(3), 101 Stat. 1330–222, 1330–224, Pub.L. No. 100–203, tit. IV, §§ 4307(3)(C), 4308, as amended and added July 1, 1988, Pub.L. No. 100–360, tit. IV, § 411(*o*)(2), (3)(A), 102 Stat. 808; Dec. 19, 1989, Pub.L. No. 101–239, tit. IV, § 6601(d)–(i), 103 Stat. 2286–2290; Nov. 3, 1990, Pub.L. No. 101–502, § 5(b), 104 Stat. 1286; Nov. 26, 1991, Pub.L. 102–168, tit. II, § 201, 105 Stat. 1102; Oct. 27, 1992, Pub.L. 102–531, tit. III, § 314, 106 Stat. 3508.

mental retardation and a residual developmental delay, which petitioner asserts was caused by a June 3, 1984 diphtheria-pertussis-tetanus (DPT) vaccination. The case was assigned to Special Master Laura D. Millman.

Special Master Millman held several status conferences, each confirmed by an order setting deadlines for the submission of certain specified materials, including an order that the petitioner submit the affidavit of a medical expert. Although, as the record reflects, and as indicated in the special master's final opinion, the petitioner's affidavit and the medical records submitted in support of the petition indicated the possibility of a table injury which had occurred within the time after administration of the vaccine specified in the Vaccine Act, petitioner failed to provide the required expert opinion to substantiate causation, pursuant to the statutory requirements.

In an order issued on January 31, 1992, the special master stated:

The following is hereby ORDERED:

1. Pursuant to motion of petitioner at the conference, and Vaccine Rule 9(a), proceedings in this case are suspended for 30 days.

2. As petitioner has informed that [sic] court that she will no longer pursue her claim, no later than February 18, 1992, petitioner shall file for voluntary dismissal with prejudice.

3. A telephonic conference regarding attorney's fees and costs will be held in the above-captioned case on February 21, 1992 at 3:00 p.m. (EST).

A "Stipulation to Judgment Dismissing Petition with Prejudice" was entered on February 20, 1992, which included the following language:

### STIPULATION to JUDGMENT DISMISSING PETITION WITH PREJUDICE

The Petitioner and the Respondent hereby stipulate that the Petition in this matter be dismissed with prejudice and that a judgment dismissing the Petition with prejudice be entered.

This stipulation is made pursuant to Vaccine Rule 21(a) and the parties agree that the Special Master will retain jurisdiction to consider any amount due the Petitioner under 42 USC 300aa–15(e)(1) for attorneys fees and other costs incurred in the proceeding in this case.

Subsequently, on February 26, 1992, the clerk of the United States Claims Court entered judgment, pursuant to the Court's Rules, Appendix J (Vaccine Rules), Rule 21(a)(2), dismissing the case with prejudice.[3]

On March 23, 1992, petitioner filed a fee application with the special master, pursuant to 42 U.S.C. § 300aa–15(e), requesting $5,581.18, and alleging that the original petition in the case had been brought in good faith and had been founded on a reasonable basis. Following the entry of a final judgment by the clerk of the court, and the court's subsequent dismissal of the case on May 19, 1992, petitioner filed an "Election to Reject Judgment" pursuant to 42 U.S.C. § 300aa–21(a). Respondent filed a response to petitioner's attorney's fees and costs application on June 26, 1992, claiming that petitioner's failure to accept the decision in the case also acted as an election to reject an award of attorney's fees. Petitioner filed her reply regarding the attorney's fees and costs request on July 1, 1992.

On December 30, 1992, the special master issued a fee and costs decision, finding that the petition had been brought in good faith and that petitioner had a reasonable

---

**3.** On the judgment, filed February 26, 1992, the clerk of the United States Court of Federal Claims wrote: "As to attorneys' fees and costs, within 21 days of the above election, see Vaccine Rule 13." Vaccine Rule 13 reads:

Any request for attorneys' fees and costs pursuant to 42 U.S.C. § 300aa–15(e) shall be filed no later than 21 days following the filing of

an election pursuant to Vaccine Rule 12. The clerk shall forward the fee request to the special master to whom the case was assigned for consideration and decision. The decision of the special master on the fee request shall be considered a separate decision for purposes of Vaccine Rules 11 and 18.

basis for bringing the claim. The special master awarded petitioner $4,470.00 in attorney's fees and $486.69 in costs, for a total of $4,956.69. The special master further concluded that petitioner's election to reject the judgment dismissing the petition did not prohibit the court from separately considering and awarding attorney's fees and costs. *Wells v. Sec'y DHHS*, No. 90–1473V, slip op. at 2 (Cl.Ct.Sp.Mstr. December 30, 1992).

On January 29, 1993, respondent filed a motion for review of the special master's decision to award attorney's fees and costs, asserting that the special master had erred when she awarded attorney's fees and costs because the petitioner had rejected the judgment on the merits. In the above-captioned case, the petitioner voluntarily stipulated to dismiss the petition, which resulted, of course, in no recovery on the merits. Respondent's motion to review appears to be based on the premise that election of the judgment, pursuant to 42 U.S.C. § 300aa–15(f)(1), or an action which constitutes being deemed to have elected the judgment pursuant to 42 U.S.C. § 300aa–21(a), is a prerequisite to an award of any "compensation," including attorney's fees and costs. Furthermore, respondent suggests that acceptance or rejection of the judgment, pursuant to § 300aa–21(a), constitutes a rejection or acceptance of all "compensation," including attorney's fees and costs, even when, as in the instant case, the petition is voluntarily dismissed. Thus, respondent argues that 42 U.S.C. § 300aa–15(e)(1) allows only one award of compensation, including an award for attorney's fees and costs. Petitioner responded on February 22, 1993 alleging that acceptance of the judgment on the merits is not required in order to receive attorney's fees and costs for conduct of the proceedings before the special master. Petitioner also argues that an award for attorney's fees and costs under 42 U.S.C. § 300aa–15(e)(1) is a separate determination from an award of compensation for a vaccine related injury on the merits.

## DISCUSSION

As originally enacted, the Vaccine Act provided for *de novo* review of the factual findings of the special master by the judges of the United States Claims Court. *Donovan v. Sec'y DHHS*, 28 Fed.Cl. 459, 462 (1993) (citing *Davis v. Sec'y DHHS*, 19 Cl.Ct. 134, 140–41 (1989); *see also Bradley v. Sec'y DHHS*, 991 F.2d 1570 (Fed.Cir. 1993) (Plager, J., concurring in part and dissenting in part)). Congress, however, amended the Vaccine Act in 1989, to restrict review by the judges of the court, now called the United States Court of Federal Claims, consistent with the arbitrary and capricious standard. 42 U.S.C. § 300aa–12(e)(2) (Supp. I 1989); *see Donovan v. Sec'y DHHS*, at 462; *Hale v. Sec'y DHHS*, 22 Cl.Ct. 403, 415 (1991).

Currently, according to the Vaccine Act, when a motion to review a special master's decision is filed pursuant to 42 U.S.C. § 300aa–12(e)(2), the judges of the United States Court of Federal Claims may:

(A) uphold the findings of fact and conclusions of law of the special master and sustain the special master's decision,

(B) set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law, or,

(C) remand the petition to the special master for further action in accordance with the court's direction.

42 U.S.C. § 300aa–12(e)(2). With only minor word differences, Vaccine Rule 27 repeats these same statutory directives.

The language of both the Vaccine Act and the Vaccine Rules is clear that decisions of a special master may only be set aside by the Court of Federal Claims if the decision of the special master was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 42 U.S.C. § 300aa–12(e)(2)(B); RCFC, App. J, Rule 27(b). The developing case law also supports application of the arbitrary and capricious, abuse of discretion or not in accordance with law standard of review. *Cucuras v. Sec'y of DHHS*, 993 F.2d 1525,

(Fed.Cir.1993); *Hines v. Sec'y DHHS*, 940 F.2d 1518, 1523–24 (Fed.Cir.1991); *Gamache v. Sec'y DHHS*, 27 Fed.Cl. 639, 643 (1993); *Lonergan v. Sec'y DHHS*, 27 Fed. Cl. 579, 579–80 (1993); *Perez v. Sec'y DHHS*, 27 Fed.Cl. 200, 201 (1992) (*citing Stotts v. Sec'y DHHS*, 23 Cl.Ct. 352, 358–61 (1991)).

■ When applying the arbitrary and capricious standard, a reviewing court is not empowered to substitute its own judgment for that of a previous trier of fact. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971). Instead, in determining whether a decision was arbitrary and capricious, a court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Id.* Furthermore, "[i]f the special master has considered the relevant evidence in the record, drawn plausible inferences and articulated a rational basis for the decision, reversible error will be extremely difficult to demonstrate." *Hines v. Sec'y DHHS*, 940 F.2d 1518, 1528 (Fed. Cir.1991). *See Lewis v. Sec'y DHHS*, 26 Cl.Ct. 233, 236 (1992); *Murphy v. Sec'y DHHS*, 23 Cl.Ct. 726, 729–730 (1991). Thus, the decision of a special master may be found to be arbitrary and capricious only if the special master:

> relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence ... or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Hines*, 940 F.2d at 1527 (quoting *Motor Vehicle Mfrs. Assn. v. State Farm Mut. Automo. Ins. Co.*, 463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)).

Moreover, according deference to the special master's decision requires that the reviewing court "may not substitute its own judgment for that of the special master if the special master has considered all relevant factors, and has made no clear error of judgment." *Lonergan v. Sec'y of DHHS*, 27 Fed.Cl. at 579–80; *Perez*, 27 Fed.Cl. at 201 (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971); *Hyundai Elecs. Indus. Co. v. United States Int'l Trade Comm'n*, 899 F.2d 1204, 1209 (Fed.Cir.1990); *Gamalski v. Sec'y DHHS*, 21 Cl.Ct. 450, 451–52 (1990)).

■ Therefore, when reviewing the decision of a special master, judges of the Court of Federal Claims should only overturn the award of attorney's fees and costs if the Secretary of the Department of Health and Human Services can demonstrate that the special master acted arbitrarily, capriciously, abused his/her discretion, or acted otherwise not in accordance with the law. As pointed out by the United States Court of Appeals for the Federal Circuit in *Hines v. Sec'y DHHS*, however, no "uniform" definition of the arbitrary and capricious standard has emerged. In *Hines*, however, the court offered a wide variety of examples in which the arbitrary and capricious standard was applied:

> "an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise," *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Automobile Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983) (review of agency rulemaking); agency must articulate a satisfactory explanation for its action including a "rational connection between the facts made and the choice made," *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168, 83 S.Ct. 239, 246, 9 L.Ed.2d 207 (1962) (review of agency adjudication); "proof that there was 'no reasonable basis' for the administrative decision will also suffice [to show arbitrary and capricious conduct], at least in many situations," *Prineville Sawmill Co., Inc. v. United States*, 859 F.2d 905, 913 (Fed.

Cir.1988) (quoting *Keco Ind., Inc. v. United States*, 492 F.2d 1200, 1203–04, 203 Ct.Cl. 566 (1974)) (review of pre-award bid protest action against letting of government contract); reviewing court must "guard against an agency's drawing inferences that are 'arbitrary' in relation to the facts found, no matter how substantial may be the support for those facts," *Midtec Paper Corp. v. United States*, 857 F.2d 1487, 1498 (D.C.Cir.1988) (review of agency adjudication); "the central focus of the arbitrary and capricious standard is on the rationality of the agency's 'decisionmaking,' rather than its actual decision," *United States v. Garner*, 767 F.2d 104, 116 (5th Cir.1985); "whether the decision was based on a consideration of relevant factors, whether there has been a clear error of judgment and whether there is a rational basis for the conclusions ...," *Mobil Oil Corp. v. Department of Energy*, 610 F.2d 796, 801 (Temp.Emer.Ct.App.1979), *cert. denied*, 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980) (review of agency rulemaking) (quoting *Texaco, Inc. v. Federal Energy Admin.*, 531 F.2d 1071, 1076–77 (Temp. Emer.Ct.App.1976)).

*Hines v. Sec'y DHHS*, 940 F.2d at 1527–28.

■ Distinguished from scrutiny of findings of fact questions under the arbitrary and capricious standard, however, are questions of statutory construction. These are generally reviewed under the "not in accordance with law" standard. *Arrowwood v. Sec'y DHHS*, 28 Fed.Cl. 453, 456 (1993). Moreover, "[l]egal conclusions are, of course, always reviewed *de novo. Bradley v. Sec'y DHHS*, 991 F.2d 1570, 1574 (Fed. Cir.1993). *See also, Powers v. Commissioner*, 312 U.S. 259, 260, 61 S.Ct. 509, 510, 85 L.Ed. 817 (1941); *Braun, Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 825 (Fed.Cir.1992)." As stated in *Munn v. Sec'y DHHS*, "Issues of law—constitutional imperatives, statutory construction, procedural requirements—come to us [the Court of Appeals for the Federal Circuit] for decision with little deference, if any, owed to or expected by the forums below."

*Munn v. Sec'y DHHS*, 970 F.2d 863, 870 (Fed.Cir.1992).

■ This court also believes that the review of a legal determination by the special master, such as is presented in the instant case on the issue of whether attorney's fees can be awarded to a petitioner who does not accept the judgment of the special master, also should be conducted pursuant to the "not in accordance with law" standard, as articulated in 42 U.S.C. § 300aa–12(e)(2). The court declines to adopt the standard applied by some of its colleagues (for example, in *Ultimo v. Sec'y DHHS*, 28 Fed.Cl. 148, 149 (1993)) that *de novo* review of legal conclusions is not appropriate and that legal conclusions of the special master in vaccine cases should also be reviewed by the arbitrary and capricious, or abuse of discretion standard.

■ Furthermore, the assigned judge of the United States Court of Federal Claims should conduct a *de novo* review of the proper statutory construction, and if appropriate, resort to the legislative history, to reach its own conclusions regarding the meaning of the statute. Unlike instances when a trier of fact makes factual findings, for which credibility determinations and evaluation of the weight of the evidence are critical, review of statutory construction appears to this judge to require *de novo* review. Indeed, the accepted rules of statutory construction, discussed more fully below, direct that the first review of a statute look to obtaining an understanding of the "plain meaning" of the words of the statute as written by the legislature. The plain meaning of words are discernable without the necessity to defer to another's interpretation of those words. In essence, the court agrees with the Court of Appeals for the Federal Circuit that the standards of review vary depending on which aspect of the case is being reviewed.

These standards vary in application as well as degree of deference. Each standard applies to a different aspect of the judgment. Fact findings are reviewed by us, as by the Claims Court judge, under the arbitrary and capricious stan-

dard; legal questions under the 'not in accordance with law' standard; and discretionary rulings under the abuse of discretion standard. The latter will rarely come into play except where the special master excludes evidence.

*Munn v. Sec'y DHHS,* 970 F.2d at 870 n. 10.

This court, of course, will take what it views as its responsibilities to review the decision of the special master seriously and address both the legal and factual issues, while applying the differing, applicable standards of review. The court notes, however, that the recent decision in *Bradley v. Sec'y DHHS,* 991 F.2d 1570 (Fed.Cir.1993), has raised serious questions regarding the function of a review by a judge of the Court of Federal Claims of a special master's decision. The issue is particularly acute regarding whether or not the Court of Appeals for the Federal Circuit will conduct a *de novo* review of the fact and law issues in the case, and in effect disregard the work of the judges of the Court of Federal Claims. This court finds it difficult to believe that the appellate court wishes to undertake *de novo* review even of the factual findings of the special master, *(see also Donovan v. Sec'y DHHS,* 28 Fed.Cl. 459, 462 (1993)), relegating this court to the role, under certain scenarios, of nothing more than a ministerial rubber stamp, akin to a required step along the path of exhaustion of necessary remedies. Such, nonetheless, appears to be the result of the *Bradley* language. However, to facilitate obtaining more specific guidance from the appellate court, this court offers the following recitation of what it believes is the current, confused state of the law.

The language of the Vaccine Act, as passed, left a number of issues unresolved at the time of its passage. Moreover, the Vaccine Act has been amended on multiple occasions (see footnote 2, above). As a result, there is considerable confusion and ambiguity on a number of issues, including the standard of review by which decisions of the Court of Federal Claims are to be reviewed by the United States Court of Appeals for the Federal Circuit in cases arising under the Vaccine Act. The Vaccine Act provides in pertinent part:

> The findings of fact and conclusions of law of the United States Claims Court on a petition shall be final determinations of the matters involved, except that the Secretary or any petitioner aggrieved by the findings or conclusions of the court may obtain review of the judgment of the court in the United States court of appeals for the Federal Circuit upon petition filed within 60 days of the date of the judgment with such court of appeals within 60 days of the date of entry of the United States Claims Court's judgment with such court of appeals.

42 U.S.C. § 300aa–12(f).

This language has given rise to confusion and contradiction in both the United States Court of Federal Claims and in the United States Court of Appeals for the Federal Circuit. Previous decisions in both courts have produced differing conclusions as to how this language should be interpreted and what standard of review should be applied.

The issues were addressed some years ago by the Court of Appeals for the Federal Circuit in *Hines v. Sec'y of DHHS.* In *Hines,* the court wrote:

> Our precedent shows a consistent pattern which provides us with clear guidance in the instant situation. Like a decision of the Claims Court or the Court of International Trade sustaining an agency decision as not arbitrary and capricious, and like a determination by a district court that a special master's decision is not clearly erroneous, a Claims Court vaccine decision upholding a special master must be viewed as a *legal* conclusion that the master's decision was not 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law....' 42 U.S.C. § 300aa–12(e)(2)(B). We therefore hold that in a case arising under the 1989 amendments to the Vaccine Act, we review *de novo* the Claims Court determination as to whether or not the special master's decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accor-

dance with law. In effect, then, we review the underlying decision of the special master under the arbitrary and capricious standard of 300aa–12(e)(2)(B) [citation omitted].

*Hines v. Sec'y DHHS*, 940 F.2d 1518, 1524 (Fed.Cir.1991).

Subsequently, in *Munn v. Sec'y DHHS*, 970 F.2d 863, 870 (Fed.Cir.1992), the language of a footnote to the opinion seems to contradict the direction in *Hines,* and suggest that the Federal Circuit should review the judgment of the Claims Court under an arbitrary and capricious standard. The *Munn* court stated: "The effect of this [42 U.S.C. § 300aa–12(e)(2) ] is to give the special master's determinations decisional effect, and to place the Claims Court in the role of a reviewing judge." In *Munn,* which has been extensively referred to in subsequent decisions, the Court of Appeals for the Federal Circuit wrote:

Close attention to the statute tells us several important things. First, no appeal is provided to this court from the decision of the special master. It is only the Claims Court that is subject review here. Second, it is only the final *judgment* of the Claims Court that we review. We know ... that the statute contemplates that fact finding will be done only by the special master. Only in extraordinary cases will the Claims Court undertake to do any independent fact finding. *In arriving at its judgment, the only time the Claims Court can make its own findings of fact is when that court as a matter of law, has concluded that the special master was 'arbitrary and capricious'* ... [emphasis added] and that it is necessary for the Claims Court to substitute its own findings of fact. Absent that, there are no separate findings of fact.

This much is clear. Under the 1989 amendments it is the judgment of the Claims Court that we review directly, and only indirectly the decision of the special master. Issues of law—constitutional imperatives, statutory construction, procedural requirements—come to us for decision with little if any deference owed to or expected by the forums below. With regard to both fact-findings and fact based conclusions, the key decision maker in the first instance is the special master. The Claims Court owes these findings and conclusions by the special master great deference—no change may be made absent first a determination that the special master was 'arbitrary and capricious.' This is a standard well understood to be the most deferential possible. [Citations omitted.]

When a case comes before us in which the Claims Court has upheld the findings and conclusions of the special master against a charge that they were arbitrary and capricious, and the Claims Court has rendered judgment accordingly, it follows that the Claims Court judgment is entitled to at least the same deference by us as that accorded the special master by the Claims Court. That is, we may not disturb the judgment of the Claims Court unless we find that judgment to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. This standard is consistent with and elaborates upon the standard for review of post–1989 vaccine compensation cases first enunciated in *Hines....* Any other standard would create an anomalous situation, one in which the affirming decision (the claims court judgment) was more readily overturned than the original decision (that of the special master).

*Munn v. Sec'y DHHS*, 970 F.2d 863, 870–71 (Fed.Cir.1992).

The Federal Circuit further seemed to endorse the *Munn* reasoning in *Phillips v. Sec'y DHHS*, 988 F.2d 111, 112 (Fed.Cir. 1993):

As we explained at length in *Munn* (citation omitted), we do not then simply redo what has already been done. We do not retry the case, as has already been done by the special master; we do not review the special master's decision, as has already been done by the judge of the Court of Federal Claims. The statute mandates that we review the judgment of the Court of Federal Claims in the case. As we explained in *Munn*, in a

case in which the Court of Federal Claims affirms the special master that means we determine, again under a highly deferential standard with regard to the fact issues, whether the Court of Federal Claims erred in its affirmance of the special master's decision.

*Phillips v. Sec'y DHHS*, 988 F.2d 111, 112 (Fed.Cir.1993).

The role assigned to the Court of Federal Claims described in the *Munn* and *Phillips* decisions by the Court of Appeals for the Federal Circuit, however, seems to be contradicted by the more recent Federal Circuit language included in the majority opinion in *Bradley v. Sec'y DHHS*, 991 F.2d 1570, 1574 (Fed.Cir.1993), which reaches beyond the words of the *Hines* decision, although the *Bradley* court tries to show its consistency with *Munn:*

> *The determination of whether fact finding was arbitrary and capricious, we have held, is a legal conclusion,* Munn, 970 F.2d at 870 ("the only time the Claims Court can make its own findings of fact is when that court, *as a matter of law,* has concluded that the special master was 'arbitrary and capricious' ") (emphasis added); *Hines* at 1524 ("a Claims Court vaccine decision upholding a special master must be viewed as a *legal* conclusion that the master's decision was not 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law....' "). *Cf.* 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2524 at 541–42 (1971) ("Whether the evidence is sufficient to create an issue of fact for the jury is solely a question of law to be determined by the court. The standard in passing on that question is the same ... in the trial court and on appeal.") *Legal conclusions are, of course, always reviewed de novo. See, e.g., Powers v. Commissioner of Internal Revenue,* 312 U.S. 259, 260 [61 S.Ct. 509, 510, 85 L.Ed. 817] (1941); *Braun Inc. v. Dynamics Corp. of Am.,* 975 F.2d 815, 825 (Fed.Cir.1992). [Emphasis added]. The concurrence, however, seemingly would square the standard of review: we would decide whether the Claims Court judge

was arbitrary and capricious when he decided whether the special master was arbitrary and capricious. Such compounded deference would constitute a new, Vaccine Act, precedent, or elsewhere. *When the Claims Court upholds all of the findings of the special master, there are no findings by the Claims Court.* 42 U.S.C. § 300aa–12(e)(2)(A). *Thus if findings are challenged on appeal, we must review the findings of the special master.* [Emphasis added.] As the Vaccine Act explicitly demands, those findings are reviewed under an arbitrary and capricious standard. 42 U.S.C. § 300aa–12(e)(2)(B).

*Bradley v. Sec'y DHHS*, 991 F.2d 1570, 1574 (Fed.Cir.1993) (emphasis added).

In *Bradley* the Federal Circuit commented on the *Phillips* holding, asserting that the *Phillips* court misread *Munn:*

> In another recent vaccine compensation case, *Phillips* (citations omitted) this court relies on language in *Munn* (citations omitted) to suggest review of the Claims Court judgment under a less rigorous standard than *de novo.* The *Phillips* opinion's implied interpretation of *Munn* is untenable for three reasons. First, it contravenes the holding in *Hines* ... a prior precedent of this court. Second the *Munn* language to which the *Phillips* court appears to refer (the opinion cites no specific page or portion) is merely *dicta* because *Munn* never specifically applied any other standard of review than *de novo* to any Claims Court legal conclusions: "Petitioner has not shown that the decision of the Claims Court was *incorrect with regard to matters of law,* or that the judgment of the Claims Court was otherwise in error under any applicable standard of review." 970 F.2d at 874 (emphasis added). Third, the *Phillips* court's interpretation of *Munn* is inconsistent with the Vaccine Act and the holding in *Munn* itself. Elsewhere, *Munn* clearly states "that the Claims Court's *judgment* is entitled to at least the same deference by us as that accorded the special master by the

Claims Court." *Id.* at 870. When, as in *Munn* and *Phillips* the Claims Court upholds all of the special master's findings and conclusions, the Claims Court "judgment [is entered] in accordance with the special master's decision" 42 U.S.C. § 300aa–12(e)(3). Thus, the "judgment" is reviewed with respect to its bases—the *special master's* findings and conclusions—which are reviewed under the arbitrary and capricious standard per 42 U.S.C. § 300aa–12(e)(2)(B). The Claims Court "decision" (opinion) may be helpful in identifying the relevant findings of the special master that are challenged by the petitioner, but we actually review the judgment and its supporting findings, rather than the "decision," as *Phillips* appears to suggest.

*Bradley v. Sec'y DHHS*, 991 F.2d 1570, 1576 (Fed.Cir.1993).

In *Bradley* there was a concurrence, in part, and a dissent, in part, which took issue with the reasoning employed by the majority, and advanced the reasoning and language employed by the *Munn* court, as follows:

> The question about which we differ is simply this: who do we review and by what standard. In two lengthy textual footnotes ... the majority tells us its answer, which at bottom seems to be that the standard is a 'legal' conclusion that we review '*de novo*,' and from that all else appears to follow automatically. But saying something is 'legal' hardly defines the universe of possible consequences—a fact determined to be such 'as a matter of law' and therefore presumably 'legal' does not thereby become less of a fact.... After first doing it differently, Congress determined that fact finding and fact concluding were to be done by a group of specialists called Special Masters, under the overall supervision of the Claims Court, now the Court of Federal Claims (CFC). The responsibility originally assigned to CFC judges for making these factual determinations was taken away. *See id.* § 300aa–12(d)(1) (Supp V.1987) and Congress left them instead with a limited appellate review role, and with orders to apply a highly deferential legal standard to the review of the special masters' fact determinations. *See id.* § 300aa–12(e)(2). In *Munn*, this court reviewed at length this history and concluded that our own review role must be equally if not more constrained. The statute directs that we 'review the judgment of the [C]ourt [of Federal Claims]'—the judgment that court reaches after its review of the special master.... We agreed we would review that judgment on the same highly deferential standard that that court must apply to the special masters. I understand this to mean that we look at the judgment of the CFC, we read the judge's opinion in support of that judgment, and with regard to fact-based determinations, we defer absent a clear showing that something went badly awry.

> The majority opinion in this case is based on a quite different approach. The special master's fact determinations come in for extensive review and discussion, and while they are ultimately upheld, the court makes clear that this is only because we find them acceptable. (The work of the CFC is mentioned occasionally in passing.) The majority believes it is our duty to do a second time what the statute has specifically assigned to the judges of the CFC: review the fact-based findings and conclusions of the special masters, and decide whether they should be upheld.

Moreover, subsequent decisions issued by the United States Court of Appeals for the Federal Circuit do not resolve the questions left by these apparently contradictory holdings regarding the scope of review to be afforded decisions issued by judges of the Court of Federal Claims on either factual or legal issues. In *Cucuras v. Sec'y DHHS*, the Federal Circuit cited *Bradley* and *Hines* in its decision:

> The Court of Federal Claims may reverse a special master's findings and conclusions only in the face of arbitrary, capricious, or unlawful decision. 42 U.S.C. § 300aa–12(e)(2). This court reviews the Court of Federal Claims determination

under this highly deferential standard *de novo* (emphasis in original).

*Cucuras v. Sec'y DHHS*, 993 F.2d 1525, 1527 (Fed.Cir.1993).

The Court of Federal Claims judges also are obviously struggling to understand the current state of the law. In *Donovan v. Sec'y DHHS*, 28 Fed.Cl. 459, 462 (1993), the court wrote:

Congress amended the Vaccine Act to restrict the Court of Federal Claims' consistent with the arbitrary and capricious standard. 42 U.S.C.A. § 300aa–12(e)(2). [Citation omitted.] This development regularized the review consistent with judicial review of other factfinders. This solution posed a problem on appeals, recently addressed at length in *Bradley* .... The conundrum presented is whether appellate court review of a Court of Federal Claims judgment is *de novo*, which devolves to reviewing the decision of a special master directly to see whether it was arbitrary and capricious, or whether the review is based on the arbitrary and capricious standard. This seemingly semantic distinction is of significant practical import to the fisc, on the one hand, and to the Court of Federal Claims on the other. The interests of the taxpayer are implicated, because the taxpayer is paying for petitioners' judicial review through the appellate process. It is altogether unprecedented that Congress would fashion an appeals system that encourages successive redundant judicial review, while providing a mechanism for reimbursing the attorneys' fees of private parties employing that process....

It is the court's duty to carry out faithfully the dictates of Congress, and no one has suggested that the court has been less than scrupulous in adhering to the requirements of the Vaccine Act. As the concurring and dissenting opinion in *Bradley* makes clear, however, the effect of the current appellate review is to duplicate the task assigned to the Court of Federal Claims. In other words, the appellate court re-reviews all the work of the special master that has been reviewed by the Court of Federal Claims in order to determine whether the judgment of the Court of Federal Claims should stand. Whether Congress intended this precise result can be debated, as *Bradley* dramatizes. Nonetheless, it is a fact that this result obtains at present and results in an obvious duplication of judicial resources.

In another recent decision, *Arrowwood v. Sec'y DHHS*, 28 Fed.Cl. 453, 457 (1993) the court held that:

CAFC decisions reflect ambiguity as to the standard of review in that court of a decision by the Court of Federal Claims on questions of law. *See Bradley* (*de novo* review of a Court of Federal Claims decision). (Citation omitted.) *Munn v. Secretary of Dep't of Health & Human Services*, (citation omitted) (judgment of the Court of Federal Claims may not be disturbed "unless we find that judgment to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.").

The decisions issued to date by the Court of Appeals for the Federal Circuit also leave unresolved many issues regarding the role of the judges of the Court of Federal Claims in vaccine cases. The Circuit Court has spoken to the situation in which the Court of Federal Claims upholds the special master's factual findings and makes no additional findings of fact, and although left without much dignity, at least the path is clear. Unresolved, however, are other equally important scenarios, including what should occur when the judge makes his/her own additional findings of fact in accordance with 42 U.S.C. § 300aa–12(e)(2)(B). Judicial resources being as scarce as they are, we need guidance as to the level of effort to be expended on vaccine cases by judges of the United States Court of Federal Claims.

Nonetheless, without clear direction, this court will undertake to review the objection filed by the respondent to the decision of the special master awarding attorney's fees and costs and will treat this case with the same attention as if the confusion regarding the scope of review did not exist.

Therefore, the balance of this opinion will be directed to determining whether the special master erroneously decided a question of law, namely, under the Vaccine Act can attorney's fees and costs be awarded if the petitioner does not elect to accept the judgment of the special master.[4] Then, if the court finds that the special master properly interpreted the law to allow separate decisions, one on the merits, and one on the award of attorney's fees and costs, this court, in accordance with the arbitrary and capricious standard, must proceed to review the special master's factual determinations that the petition was brought in good faith and founded on a reasonable basis in support of her determination that an award of attorney's fees and costs was appropriate.

■ The United States Court of Appeals for the Federal Circuit has addressed the issue of how to approach statutory interpretation, as follows:

Statutory construction requires the application of recognized rules. *See generally Sutherland Statutory Construction*

(4th ed.). First, " ' "[t]he starting point in every case involving construction of a statute is the language itself." ' " *Greyhound Corp. v. Mt. Hood Stages, Inc.,* 437 U.S. 322, 330, 98 S.Ct. 2370, 2375, 57 L.Ed.2d 239 (1978). Second, where a statute states what a term "means" then all other meanings not stated are excluded. *Colautti v. Franklin,* 439 U.S. 379, 392 n. 10, 99 S.Ct. 675, 684, n. 10, 58 L.Ed.2d 596 (1979). Third, clear evidence of legislative intent prevails over other principles of statutory construction. *National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974). Fourth, absent a very clear legislative intent, the plain meaning will prevail. *Aaron v. SEC,* 446 U.S. 680, 697, 100 S.Ct. 1945, 1956, 64 L.Ed.2d 611 (1980). Last, "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it reenacts a statute without change." *Lorillard v. Pons,* 434 U.S. 575, 580, 98 S.Ct. 866,

---

4. In a recent decision, *Munn v. Sec'y DHHS,* Judge Harkins of this court addressed the same issue as raised in the above-captioned case. According to Judge Harkins: "The sole issue raised in respondent's motion for review is whether under the [Vaccine] Program, to receive attorneys' fees and costs, a petitioner must elect to accept the judgment of the court." *Lisa Munn v. Sec'y DHHS,* 28 Fed.Cl. 490, 491 (1993). In his decision, Judge Harkins reviewed the emerging case law on the subject, as follows:

Respondent contends that attorneys' fees and costs are elements of compensation under the Program, and that, in order for petitioner to collect any award of compensation under the Program, a petitioner must first accept the judgment, regardless of whether that decision awarded compensation or determined there was no entitlement to compensation. Respondent's arguments on this issue have been considered by this court in *Saunders v. Secretary of Dep't of Health & Human Servs.,* 26 Cl.Ct. 1221 (1992), *appeal docketed,* No. 93–5037. *Saunders* determined that attorneys' fees and costs could be awarded under Section 15(e)(1) notwithstanding an election under Section 21(a)(2) to file a civil action for damages. *Saunders* has been followed in this court in review of the decision in *Klein v. Secretary of Dep't of Health & Human Servs.,* No. 91–1548V, filed March 3, 1993 (unpublished). Special masters also have followed

the *Saunders* decision. *See Wodicker v. Secretary of Dep't of Health & Human Servs.,* No. 92–64V, 1993 WL 64280 (Sp.Mstr. Feb. 23, 1993); *Mains v. Secretary of Dep't of Health & Human Servs.,* No. 90–992V, 1993 WL 69724 (Sp.Mstr. Feb. 26, 1993); *Mitchell v. Secretary of Dep't of Health & Human Servs.,* No. 90–1016V, 1993 WL 129634 (Sp.Mstr. Apr. 5, 1993); *Roberson v. Secretary of Dep't of Health & Human Servs.,* No. 91–1677V, 1993 WL 120639 (Sp.Mstr. Apr. 2, 1993). *Id.*

This latest *Munn* opinion issued by Judge Harkins on June 1, 1993, is part of a case which has a lengthy procedural history: On May 15, 1990, the special master found that petitioner was not entitled to compensation under the Program. On review by the Court of Federal Claims, the special master's decision that there was no entitlement to compensation under the Program was upheld. *Munn v. Sec'y DHHS,* 21 Cl.Ct. 345 (1990). On further review, the Court of Appeals for the Federal Circuit affirmed that there was no entitlement to compensation. *Munn v. Sec'y DHHS,* 970 F.2d 863 (Fed.Cir. 1992). On October 20, 1992, pursuant to Section 21(a)(2), petitioner filed an election in writing to file a civil action. In the election notice, petitioner did not "accept the judgment." Respondent then filed a motion for review of the attorney's fees award, giving rise to the most recent *Munn* decision, *Munn v. Sec'y DHHS,* 28 Fed.Cl. 490 (1993).

870, 55 L.Ed.2d 40 (1978); *National Lead Co. v. United States,* 252 U.S. 140, 146–47, 40 S.Ct. 237, 239, 64 L.Ed. 496 (1920); *Farrell Lines, Inc. v. United States,* 499 F.2d 587, 605, 204 Ct.Cl. 482 (1974); *cf. Pierce v. Underwood,* [487] U.S. [552], 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988).

*Johns–Manville Corp. v. United States,* 855 F.2d 1556, 1559 (Fed.Cir.1988), *cert. denied,* 489 U.S. 1066, 109 S.Ct. 1342, 103 L.Ed.2d 811 (1989). Thus, if a statute is plain and unequivocal on its face, there is no need to resort to the legislative history underlying the statute. *Reid v. Department of Commerce,* 793 F.2d 277, 281 (Fed.Cir.1986) (citing, *United States v. Oregon,* 366 U.S. 643, 648, 81 S.Ct. 1278, 1281, 6 L.Ed.2d 575 (1961), *reh'g denied,* 368 U.S. 870 (1961)). Furthermore, a court should resort to legislative history only if:

> ... a literal interpretation would lead to an incongruous result. For example, if a literal reading of the statute would impute to Congress an irrational purpose, *United States v. Bryan,* 339 U.S. 323, 338, 70 S.Ct. 724, 734, 94 L.Ed. 884 (1950), or would thwart the obvious purpose of the statute, *Trans Alaska Pipeline Rate Cases,* 436 U.S. 631, 643, 98 S.Ct. 2053, 2061, 56 L.Ed.2d 591 (1978), or would lead to a result at variance with the policy of the legislation as a whole, *Trustees of Indiana University v. United States,* 618 F.2d 736, 739, 233 Ct.Cl. 88, 94 (1980), then literal interpretation will be eschewed in favor of resort to the legislative history to ascertain the intent of Congress. *United States v. Oregon,* 366 U.S. at 648, 81 S.Ct. at 1281; 2A Sands § 46.07.

*Reid,* 793 F.2d at 281–82.

Accepted principles of statutory construction also provide that courts must interpret a statute as a whole. *Massachusetts v. Morash,* 490 U.S. 107, 115, 109 S.Ct. 1668, 1673, 104 L.Ed.2d 98 (1989). To this effect, the Supreme Court has stated:

> On numerous occasions we have noted that " ' " '[i]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.' " ' " *Kelly v. Robinson,* 479 U.S. 36, 43 [107 S.Ct. 353, 357, 93 L.Ed.2d 216] (1986), quoting *Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 221 [106 S.Ct. 2485, 2494, 91 L.Ed.2d 174] (1986) (quoting *Mastro Plastics Corp. v. NLRB,* 350 U.S. 270, 285 [76 S.Ct. 349, 359, 100 L.Ed. 309] (1956) (in turn quoting *United States v. Heirs of Boisdore,* 8 How. 113, 122 [12 L.Ed. 1009] (1949))).

*Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 51, 107 S.Ct. 1549, 1555, 95 L.Ed.2d 39 (1987). *See Sutherland Stat. Const.* §§ 46.05, 46.06 (5th ed. 1992). Otherwise stated, courts must " 'give effect, if possible, to every clause and word of a statute,' " *United States v. Menasche,* 348 U.S. 528, 538–39, 75 S.Ct. 513, 519–20, 99 L.Ed. 615 (1955), quoting *Montclair v. Ramsdell,* 107 U.S. 147, 152, 27 L.Ed. 431 (1883), for " '[t]he cardinal principle of statutory construction is to save and not to destroy.' " *Id.* (quoting *Labor Bd. v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 30, 57 S.Ct. 615, 621, 81 L.Ed. 893 (1937)).

Furthermore, in construing a statute, courts should attempt not to interpret a provision such that it renders other provisions of the same statute inconsistent, meaningless or superfluous. *Boise Cascade Corp. v. United States E.P.A.,* 942 F.2d 1427, 1432 (9th Cir.1991). *See* Sutherland Stat.Const. § 46.06 (5th ed. 1992). As recently announced by the Supreme Court, the meaning of statutory language depends on context. *King v. Saint Vincent's Hosp.,* ___ U.S. ___, ___, 112 S.Ct. 570, 574, 116 L.Ed.2d 578 (1991) (Souter, J.) (citing *Shell Oil Co. v. Iowa Dept. of Revenue,* 488 U.S. 19, 26, 109 S.Ct. 278, 282, 102 L.Ed.2d 186 (1988)). And, as further elaborated by the Supreme Court in the same opinion, "[w]ords are not pebbles in alien juxtaposition; they have only a communal existence; and not only does the meaning of each interpenetrate the other, but all in their aggregate take their purport from the setting in which they are used." *Id.* (quoting *NLRB v. Federbush Co.,* 121 F.2d 954, 957 (2nd Cir.1941) (L. Hand, J.)). Therefore, when reviewing the Vaccine statute,

this court must construe each section in connection with all the sections so as to produce a harmonious whole. Moreover, common sense requires that the same words used twice in the same act should have the same meaning. *See* Sutherland Stat.Const. § 46.06 (5th ed. 1992).

Unfortunately, the interrelated statutory sections in the Vaccine Act which address compensation are less than a model of linguistic clarity. The most instructive subsections on the subject are located in section 300aa–15, titled "Compensation." Yet, the text of the section interweaves the discussion on recovery of compensation for the merits of a claim based on an alleged vaccine induced injury and the discussion on recovery of monies to cover attorney's fees and costs. Sections 42 U.S.C. § 300aa–15(e)(1), 42 U.S.C. § 300aa–15(f)(1) and 42 U.S.C. § 300aa–21 are key to trying to unravel the statutory scheme. These sections read:

**(e) Attorney's fees**

(1) In awarding compensation on a petition filed under section 300aa–11 of this title the special master or court shall also award as part of such compensation an amount to cover—

(A) reasonable attorney's fees, and

(B) other costs,

incurred in any proceeding on such petition. If the judgment of the United States Claims Court on such a petition does not award compensation, the special master or court may award an amount of compensation to cover petitioner's reasonable attorney's fees and other costs incurred in any proceeding on such petition if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought.

\*  \*  \*  \*  \*  \*

**(f) Payment of compensation**

(1) Except as provided in paragraph (2), no compensation may be paid until an election has been made, or has been deemed to have been made, under section 300aa–21(a) of this title to receive compensation.

42 U.S.C. § 300aa–15(e) & (f).

§ 300aa–21. Authority to bring actions

(a) Election

After judgment has been entered by the United States Claims Court or, if an appeal is taken under section 300aa–12(f) of this title, after the appellate court's mandate is issued, the petitioner who filed the petition under section 300aa–11 of this title shall file with the clerk of the United States Claims Court—

(1) if the judgment awarded compensation, an election in writing to receive the compensation or to file a civil action for damages for such injury or death, or

(2) if the judgment did not award compensation, an election in writing to accept the judgment or to file a civil action for damages for such injury or death.

An election shall be filed under this subsection *not later than 90 days after the date of the court's final judgment* with respect to which the election is to be made. If a person required to file an election with the court under this subsection does not file the election within the time prescribed for filing the election, such person shall be deemed to have filed an election to accept the judgment of the court. If a person elects to receive compensation under a judgment of the court in an action for a vaccine-related injury or death associated with the administration of a vaccine before October 1, 1988, or is deemed to have accepted the judgment of the court in such an action, such person may not bring or maintain a civil action for damages against a vaccine administrator or manufacturer for the vaccine-related injury or death for which the judgment was entered. For limitations on the bringing of civil actions for vaccine-related injuries or deaths associated with the administration of a vaccine after October 1, 1988, see section 300aa–11(a)(2) of this title.

42 U.S.C. § 300aa–21(a).

■ Section 300aa–15(e)(1) is composed of two distinct sentences. The first sentence applies to cases in which compensa-

tion is awarded and clearly provides for the inclusion of attorney's fees and costs within the sum awarded for compensation for the vaccine-related injury. The first sentence, however, does not apply to the instant case, since the above-captioned case was voluntarily dismissed without any compensation award on the merits. It is the second sentence of section 300aa–15(e)(1), to which the court directs its attention in the instant case. That sentence allows for an award of fees and costs even when the judgment does not provide for vaccine-related injury compensation and articulates two conditions as necessary precedents to prevail: (1) if the special master determines that "the petition was brought in good faith" and (2) if the special master determines that there was "a reasonable basis for the claim for which the petition was brought."

Because the language of the statute is plain and unequivocal on its face, this court need not resort to the legislative history in order to resolve this question. *See Reid v. Department of Commerce*, 793 F.2d at 281. Moreover, because a literal interpretation of the sections at issue does not impute to Congress an irrational purpose, *Bryan*, 339 U.S. at 338, 70 S.Ct. at 734, "thwart the obvious purpose of the statute," *Trans Alaska*, 436 U.S. at 643, 98 S.Ct. at 2061, or go against the policy of the legislation, *Trustees of Indiana Univ.*, 618 F.2d at 739, resort to the legislative history in the above-captioned case is not necessary.

However, even if this court were to look to the legislative history, it would only support what is clear from the plain meaning reading of the statute. The legislative history reinforces this court's understanding of what the drafters intended the term "compensation" to encompass. According to H.R.Rep. No. 908, 99th Cong., 2d Sess. 20 (1986), which predates passage of the Act, compensation can be categorized into four main areas, "Subsection (a) ... In general, potential compensation is divided into four types—(1) medical and rehabilitative care, (2) death benefits, (3) lost earnings, and (4) pain and suffering benefits." Although attorney's fees are not included

as a type of compensation. Attorney's fees, however, are discussed in a separate subsection which provides that:

> If the court awards compensation on a petition, the compensation is to include an amount to provide for reasonable attorneys' fees and other costs incurred in proceedings on the petition. If the court does not award compensation on the petition, it may, in its discretion, nonetheless make such an award for attorneys fees and costs if it determines that the action was brought in good faith and that there as a reasonable basis for the claim for with the action was bought.

*Id.* at 21. There are also several references in the legislative history of appropriations pursuant to the Act to indicate that the Congress intended for attorney's fees and costs to be included in a Vaccine Act award "after the proceedings are complete." H.R.Rep. 247, 101st Cong. 1st Sess. 514 (1989); 135 Cong.Rec. S16155 (daily ed. November 17, 1989) (statement of Mr. Kennedy). Thus, a review of the legislative history also indicates that an award for attorney's fees and costs may be made when no compensation is awarded.

Vaccine Rule 13 is further support of petitioner's contention that a special master may award attorney's fees and costs separately from a judgment on the merits, and that attorney's fees and costs may be awarded even if a petitioner rejects the judgment of the special master. Vaccine Rule 13 specifically states: "The decision of the special master on the fee request shall be considered a separate decision for purposes of Vaccine Rules 11 and 18."

Although this court concludes that 42 U.S.C. § 300aa–15(e) provides for an award of attorney's fees and costs even when no compensation is awarded for a claim on the merits of a vaccine-related injury, in order to receive an award of attorney's fees and costs, a petitioner must file an election pursuant to § 300aa–21(a)(2) to accept the judgment or file a separate civil action for damages. The issue presented is whether in this case there was a

sufficient, precedent action, akin to an election to accept the judgment or file an alternative civil action. We believe there was. On May 19, 1992, plaintiff filed a document in the above-captioned case, albeit strangely titled, "Election to Reject Judgment" [5] which the court believes can be deemed an election, entitling petitioner to request attorney's fees and costs for its efforts. The petitioner elected to reject the judgment on the merits, not to reject entitlement to compensation for attorney's fees and costs which is generally not addressed in the special master's decision, but is under Vaccine Rule 13 reserved for a subsequent separate proceeding.

A similar issue has arisen in this court before. In *Saunders v. Sec'y DHHS*, 26 Cl.Ct. 1221 (1992), petitioner, on behalf of her son, filed a petition for compensation under the Vaccine Act claiming that her son suffered a permanent seizure disorder as a result of a diphtheria-pertussis-tetanus (DPT) shot. *Id.* at 1222. The petition was dismissed after the special master found that the petitioner had not established by a preponderance of the evidence that the vaccine caused the injury. *Id.* Petitioner then elected to reject the judgment on the merits pursuant to 42 U.S.C. § 300aa–21(a) and, subsequently, filed a petition for attorney's fees and costs. *Saunders*, 26 Cl.Ct. at 1223. The Secretary of Health and Human Services objected on the basis that the United States Court of Federal Claims did not have the authority to award fees when petitioner had elected to reject the judgment on the merits. *Id.*

The *Saunders* court held that the special master may make an award for attorneys fees even when petitioner does not elect to accept judgment on the merits. *Id.* at 1225. Judge Wiese interpreted 42 U.S.C. § 300aa–15(e)(1) to mean that the special master has the authority to issue two separate decisions:

> Taken in their ordinary and every day sense, these words have to be understood to authorize the court or the special master to enter an award of attorneys' fees

and costs *after* entry of judgment on the claim-in-chief. Plainly the statute does not require all elements of compensation to be linked in a single award. Rather, the statute treats compensation as a divisible concept the component of which may be separately determined.

*Saunders*, 26 Cl.Ct. at 1225. In his decision, the Court of Federal Claims judge found that the election prerequisite in subsection 300aa–15(f)(1), as more fully explained in subsection 300aa–21(a), pertains to the judgment on the merits for a vaccine-related injury and not to an award of attorney's fees and or costs, as follows:

> Correctly understood, therefore, the election under section 21 pertains to the judgment on the merits. And, by similar reasoning, the requirement of section 15(f)(1) that an election in favor of the judgment precede the payment of compensation, is a requirement for an election in favor of a judgment on the merits granting compensation. Attorneys' fees and the judgments allowing them, are wholly separate matters.

26 Cl.Ct. at 225–26.

In a one-page opinion, *Taylor v. Sec'y DHHS*, No. 90–1455V (June 9, 1992), the court also found that the Vaccine Act permitted an award of fees after an election to reject a judgment of the special master.

Therefore, in the above-captioned case, having decided that attorney's fees and costs may be awarded when the judgment of the special master is not accepted by the petitioner, this court must review whether or not the special master's decision to award attorney's fees was proper in accordance with the arbitrary and capricious review standard for questions of fact.

The only statutory direction given the special master regarding awarding of attorney's fees is that "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." 42 U.S.C. § 300aa–15(e).

In the above-captioned case, the special master made specific findings of fact that

---

**5.** 42 U.S.C. § 300aa–21(a) specifically speaks only to an election to accept the decision of the special master, or an election to file a civil action for damages pursuant to 42 U.S.C. § 300aa–21(a).

the petitioner met these conditions before she awarded appropriate fees and costs, as follows.

Pursuant to § 300aa–15(e)(1), a special master may award attorneys' fees and costs in a case which does not result in an award of compensation if the special master determines the . petition was brought 'in good faith and there was a reasonable basis for the claim for which the petition was brought.' Petitioner must demonstrate that the petition filed was supported by the medical records or by a medical opinion in order to show good faith and a reasonable basis for bringing a claim under the Act. The court's review of the records in this case leads to the conclusion that petitioner had a sufficient basis for bringing this claim. The mother's affidavit and medical records indicate that possible manifestations of a Table injury occurred within the time frame of the Table. Accordingly, petitioner sought expert medical advice regarding the claim. Because the record did not support a favorable expert opinion, petitioner prudently dismissed the case. The ultimate failure to secure a medical opinion favorable enough to result in compensation is not fatal to a claim for fees and costs. The court finds that petitioner had good faith and a reasonable basis for bringing this claim.

Neither respondent nor the petitioner has contested the amount of the fees awarded by the special master, and the special master also included specific discussion in her opinion of the component parts of the award. This court, therefore, will not attempt to second guess, even on the basis of an arbitrary and capricious review, the calculation that $4,470.00 should be awarded to petitioner.

Despite petitioner's inability to obtain adequate medical expert opinion under the statute, the special master defended her award of attorney's fees and costs as reasonably based and brought in good faith under the circumstances presented by the case before her. Although the court is troubled by an award of attorney's fees when a petitioner voluntarily dismisses because it did not, and apparently never could, submit documentation clearly required by the act, the court is reluctant to set a standard which would dampen the willingness of parties to dismiss those cases which they discover cannot be prosecuted successfully, even if the case perhaps should never have been filed in the first place. To do so would be to run the risk that those petitioners with counsel would litigate to the end, just to ensure recovery of attorney's fees and costs. Based on the special master's decision, however, she did not consider the above-captioned action a frivolous law suit. As the original finder of fact, she had the greatest contact with the parties and is in the best position to make that determination. Applying the arbitrary and capricious standard, this court will not overturn her decision.

### CONCLUSION

After careful review of the special master's decision, the court finds that the decision of the special master to award attorney's fees and costs was not arbitrary, capricious, or an abuse of discretion. Respondent's motion for review is, hereby, DENIED and the court, hereby, **AFFIRMS** the special master's December 30, 1992 decision awarding attorney's fees and costs. The clerk of the court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**