Maria and Kevin GRICE, as Parents and
Natural Guardians of Dallas Christian
Grice, a Minor, Petitioners,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES,
Respondent.

No. 94–410V.

United States Court of Federal Claims.

June 21, 1996.

Jane Runke Lane, Ft. Myers, Florida, for petitioners.

Glenn A. MacLeod, with whom were Assistant Attorney General Frank W. Hunger, Helen M. Goldberg, Director, John Lodge Euler, Deputy Director, and Charles R. Gross, Washington, D.C., for respondent.

## OPINION

ROBINSON, Judge:

This matter is before the court on a motion for review filed by respondent, the Secretary of Health and Human Services, on February 2, 1996. Petitioners responded to this motion on February 14, 1996. For the reasons set forth in detail below, the court hereby affirms the Chief Special Master's decision awarding attorneys' fees and costs.

### Background

Petitioners filed a claim on behalf of Dallas Christian Grice under the National Vaccine Injury Compensation Program (the "Vaccine Program" or Program"), 42 U.S.C. § 300aa–1 *et seq.* (1994), (the "Vaccine Act" or "Act")[1] on June 24, 1994, for injuries suffered after the administration of an oral polio immunization vaccine that Dallas received on October 27, 1992, which was followed by a second administration on January 5, 1993. On September 26, 1994, three months after petitioners filed their petition for relief, respondent filed her report conceding that petitioners were entitled to compensation. In the time between respondent's acknowledgment of petitioners' entitlement to compensation and the passing of the 240 day statutory time period,[2] petitioners sent two notices of intent to initiate litigation against twelve potential defendants in a state court civil action and demanded settlement offers from those defendants on February 17, 1995. The statutory 240 day time period expired on February 21, 1995.

On May 18, 1995, the Chief Special Master issued the notice required by § 12(g) of petitioners' right to withdraw from the Vaccine Program for lack of a timely decision by the Chief Special Master. The court filed petitioners' Notice of Intent to Withdraw their Vaccine Act petition pursuant to § 21(b) on May 30, 1995. The Clerk of the Court entered judgment on this notice on September 13, 1995.

Petitioners filed a motion requesting attorneys' fees and costs totaling $22,285.86 on July 31, 1995. Respondent filed objections to this motion on August 21, 1995. The Chief Special Master held oral arguments on this matter on October 30, 1995, and on January 3, 1996, he issued his decision to award $7,714.00 in fees and $10,875.84 in costs for a total of $18,589.84. Respondent filed a motion to review the decision of the Chief Special Master, in which she challenged only the

propriety of the award, not the exact dollar figure.

### Contentions of the Parties

Respondent, in her motion for review, contends that this court was deprived of jurisdiction to resolve the issue of attorneys' fees and costs and, therefore, must overturn the Chief Special Master's award. Respondent argues that this conclusion is supported by the proper statutory interpretation of the Act aided by consideration of legislative history. Further, respondent asserts that petitioners have fallen short of their duty of good faith and, that given the applicable standards of review, this court should reverse the Chief Special Master's decision.

Petitioners state that this court's consideration of the Chief Special Master's decision, tempered by the applicable standards of review, must result in affirming the award of attorneys' fees and costs. They assert that the applicable law, as set forth in binding precedent, pertaining to any statutory bar and to interpretation of the Act, as well as the particular facts of this case, support the award of fees and costs. Finally, petitioners contend that they have fully satisfied their duty of good faith and are thus entitled to reasonable fees and costs.

### DISCUSSION

### I. Standard of Review

Under the Vaccine Act, when deciding a motion for review of a special master's decision, this court shall either:

(A) uphold the findings of fact and conclusions of law of the special master and sustain the special master's decision,

(B) set aside any findings of fact or conclusions of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law, or

---

1. 42 U.S.C. § 300a–1 to –34 (1988), *amended by* several public laws (codified as amended at 42 U.S.C.A. § 300aa–1 to –34 (West Supp.1996).

2. If a special master does not make a decision on a petition within the 240 days prescribed by

§ 12(d)(3)(A)(ii), the special master must notify the petitioners of their option to choose to withdraw the petition under § 21(b) or to continue to have their petition before the special master. 42 U.S.C. § 300aa–12(g).

(C) remand the petition to the special master for further action in accordance with the court's direction.

42 U.S.C. § 300aa–12(e)(2).

■ This court must apply different standards of review depending upon the aspect of the case that it is reviewing. In *Munn v. Secretary of HHS*, 970 F.2d 863, 870 n. 10 (Fed.Cir.1992), the U.S. Court of Appeals for the Federal Circuit explained:

> These standards vary in application as well as degree of deference. Each standard applies to a different aspect of the judgment. Fact findings are reviewed by us, as by the Claims Court judge, under the arbitrary and capricious standard; legal questions under the 'not in accordance with the law' standard; and discretionary rulings under the abuse of discretion standard.

■ The case at bar presents issues of statutory construction, discretionary decisions, and questions of fact. Review by this court of a question of statutory construction requires utilization of "not in accordance with the law" standard, the standard applicable to questions of law. *Saunders v. Secretary of HHS*, 25 F.3d 1031, 1033 (Fed.Cir.1994); *Munn v. Secretary of HHS*, 970 F.2d 863, 870 (Fed.Cir.1992); *Arrowood v. Secretary of HHS*, 28 Fed.Cl. 453, 457 (1993); *Wells v. Secretary of HHS*, 28 Fed.Cl. 647, 653 (1993). In essence, the judges of this court approach the "not in accordance with the law" standard as if it were a *de novo* review. *Saunders*, 25 F.3d at 1033; *Wells*, 28 Fed.Cl. at 653. Therefore, in determining the legal question of whether the Vaccine Act itself authorizes the award of attorneys' fees and costs, the court is not required to give deference to the special master's decision on this matter. In contrast, when reviewing the special master's decision to award attorneys' fees and costs in a particular case, the court adopts the rationale in *Murphy v. Secretary of HHS*, 30 Fed.Cl. 60 (1993), applying the abuse of discretion standard, "because the determination [to award attorneys' fees and costs] is based on a discretionary function allowing [the special master] to deny fees if he finds that the petition was not brought in good faith and upon a reasonable basis." *Id.*

at 61. The *Murphy* court explained that in order for this court to find that a special master abused his discretion, the court must find that his decision was:

> (1) ... clearly unreasonable, arbitrary, or fanciful; (2) ... based on an erroneous conclusion of the law; (3) ... clearly erroneous; or (4) the record contains no evidence on which ... the [special master] rationally could have based his decision.

*Id.* (citing *Hendler v. United States*, 952 F.2d 1364, 1380 (Fed.Cir.1991)).

■ The special master's finding that petitioners brought this petition in good faith is based on factual conclusions. When presented with findings of fact, this court must be highly deferential to the findings of the special master. "Review of a special master's decision by the Claims Court is expected to be an exceptional occurrence rather than a routine procedure." *Hale v. Secretary of HHS*, 22 Cl.Ct. 403, 405 (1991). Findings of fact, therefore, are reviewed under the arbitrary and capricious standard. *Munn*, 970 F.2d at 870; *Wells*, 28 Fed.Cl. at 652. The Federal Circuit has not adopted a uniform definition for the arbitrary and capricious standard, but it has explained that "[i]f the special master has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision, reversible error will be extremely difficult to demonstrate." *Hines v. Secretary of HHS*, 940 F.2d 1518, 1528 (Fed. Cir.1991).

## II. *Jurisdictional Bar*

■ Respondent raises the issue of the jurisdictional effects of a judgment entered by the Clerk of the Court pursuant to a voluntary withdrawal under § 21(b) as opposed to a judgment on the merits that awards no compensation. The Act requires that a judgment be rendered on a petition in order to be eligible to receive any type of compensation.

> If the *judgment* of the United States Court of Federal Claims on such a petition does not award compensation, the special master or court may award an amount of compensation to cover petitioner's reason-

able attorneys' fees and other costs incurred in any proceeding on such petition if the special master or court determines that the petition was brought in *good faith* and there was a *reasonable basis* for the claim for which the petition was brought. 42 U.S.C. § 300aa–15(e)(1) (emphasis added). The Act gives the special master discretion to award fees and costs to an unsuccessful plaintiff so that petitioners are able to obtain qualified legal representation when seeking compensation under the Vaccine Act, *Doe v. Secretary of HHS*, 19 Cl.Ct. 439, 443 (1990), while also allowing petitioners to retain the option to reject the judgment of this court, still be reimbursed for attorneys' fees and costs, and if they choose, pursue a civil remedy. *Saunders*, 25 F.3d at 1036. Both petitioners and respondent agree on this well established rationale behind the Act. Nevertheless, disagreement arises as to whether the judgment entered in the case of a voluntary withdrawal is a judgment as envisioned by Congress under § 15(e)(1).

The *Martin* court iterates that there must first be a judgment on a petition filed under § 300aa–11 before the special master obtains jurisdiction to make the determination of whether to award attorneys' fees and costs. *Martin v. Secretary of HHS*, 62 F.3d 1403, 1406 (Fed.Cir.1995). Petitioners argue that once the statutory period of 240 days passed without the court rendering a decision on the amount of compensation to which they were entitled, they became unsuccessful plaintiffs. They claim that the purpose of the time limit is to allow petitioners to seek timely relief for injuries resulting from the administration of a vaccine. When the time limit was not met, they opted to file suit in state court in order to obtain the necessary relief in a more timely fashion. They maintain that, for petitioners to be awarded fees and costs, a judgment on the merits is not required because an order determining the propriety of an award of attorneys' fees and costs is separate. *See Saunders*, 25 F.3d at 1035, (rejecting judgment on merits does not imply a rejection of attorneys' fees and costs). If it is acceptable for unsuccessful petitioners, who elect not to

accept the court's judgment, to receive fees, *id.* at 1036, fees should be awarded in the case of a voluntary withdrawal under § 21(b).

Respondent counters that petitioners are not unsuccessful plaintiffs because there was no judgment rendered on the merits. A judgment that does not grant the petitioner compensation suggests that the merits of the case were decided adversely to the petitioner. Respondent argues that no decision within the contemplation of § 12(e)(3) was made, and, thus, there was no judgment. *Saunders* is distinguishable from this case in that the petitioner in *Saunders* elected to reject the court's final judgment and decision on the merits awarding compensation.

Respondent also points to legislative history to support her argument that Congress did not intend that any compensation be awarded in cases that are voluntarily withdrawn. "[A]n individual who withdraws a petition under this provision may not thereafter elect to return to the system. Nor may such an individual receive any payment from the compensation system." H.R.Rep. No. 391, 100th Cong., 1st Sess., pt. 1, at 699 (1987), U.S.Code Cong. & Admin.News 1987, pp. 2313–1, 2313–373. This argument is irrelevant to the case at bar because, as established in *Saunders*, a petition for attorneys' fees and costs is to be treated separately from a petition filed under the Vaccine Act ·on the merits of liability. The Federal Circuit reasoned that "when the Vaccine Act requires an election to accept the court's judgment before the payment of 'compensation,' it is referring to 'compensation' in the sense of payment for the kinds of expenses and losses which are referenced in 42 U.S.C. § 300aa–15(a) to (d)."[3] *Saunders*, 25 F.3d at 1035.

The court rejects respondent's argument. In this case, petitioners, in compliance with the Act, exercised their right to withdraw their petition, not because of any neglect or failure to fulfill the requirements of the Act, but because of the special master's delay in rendering a timely decision. In short, petitioners allowed passage of the full number of days prescribed under the Act to be awarded

---

**3.** 42 U.S.C. § 300aa–15(a) to (d) describes the various types of compensation that may be

awarded under the Act to a petitioner under § 300aa–11 for a vaccine-related injury or death.

satisfactory compensation, but failed to receive it. Respondent has already conceded that petitioners were entitled to compensation, and petitioners chose not to wait for the special master's decision on how much money was an appropriate award. It would be unjust for this court to penalize petitioners for simply exercising their rights as set forth under the Act, especially since plaintiffs are required to pursue relief under the Act before filing suit in another forum.

Respondent argues that this court is deprived of jurisdiction to determine whether attorneys' fees and costs should be awarded because a judgment entered after a withdrawal has a jurisdictional result different from any other judgment entered by this court. The special master addressed this argument by essentially equating a voluntary withdrawal under § 11(a)(2)(A)(ii) to a voluntary dismissal under Vaccine Rule 21(a). He explained that because it has been well established that attorneys fees and costs may be awarded after a voluntary dismissal, by analogy, attorneys' fees should be awarded in cases where petitioners voluntarily withdraw their petition. *Grice v. Secretary of HHS,* No. 94–410V, slip op. at 6–7, 1996 WL 16055 (Fed.Cl. Jan. 3, 1996) ("Dec."). "Both voluntary dismissals and withdrawals are available unilaterally as a matter of right.... [A] withdrawal occasions a loss of jurisdiction no greater in scope or effect than that following a Vaccine Rule 21(a)(1) voluntary dismissal." *Id.*

The Supreme Court addressed this argument and held that a court does not lose jurisdiction over collateral issues when a case is voluntarily dismissed. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 395, 110 S.Ct. 2447, 2455–56, 110 L.Ed.2d 359 (1990). In *Cooter,* the Supreme Court held that a federal court does not lose jurisdiction over collateral issues once an action is no longer pending. This court has held that issues of attorneys' fees and costs are collateral in nature. Thus, this court maintains jurisdiction over those issues. *Saunders,* 25 F.3d at 1035. In this case, petitioners seek an award of fees and costs, which they necessarily incurred through their participation in the Vaccine Program. Although petitioners have withdrawn their petition, this court maintains jurisdiction over their request for fees because this is a collateral issue of the type referred to by the Supreme Court in *Cooter.*

In light of precedent, it has been established that § 15(e)(1) should be interpreted to mean that the Court of Federal Claims has the authority to issue two separate decisions for purposes of the Vaccine Act. *Saunders,* 25 F.3d at 1035; *Wells,* 28 Fed.Cl. at 663. Vaccine Rule 13 further supports this contention by stating that "[t]he decision of the special master on the fee request shall be considered a separate decision for purpose of Vaccine Rules 11 and 18." [4]

### III. *Statutory Interpretation*

The special master's assertion that a voluntary dismissal is analogous to a voluntary withdrawal must be further explored. A voluntary dismissal was created by this court in Vaccine Rule 21(a), which states:

> A petition may be dismissed by petitioner without order of the special master (1) by filing a notice of dismissal at any time before service of respondent's report or (2) by filing a stipulation of dismissal signed by all parties who have appeared in the proceeding. Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal may, in the discretion of the special master, be deemed to operate as an adjudication upon the merits when filed by a petitioner who has previously dismissed the same claim in the Office of the Special Masters of the Claims Court or in the court itself.

Vaccine Rule 21(a). A voluntary withdrawal was created by Congress in § 21(b) of the Act, which provides, in relevant part, that:

> A petitioner under a petition filed under section 300aa–11 of this title may submit to

---

4. Vaccine Rule 11 instructs the Clerk of the Court to enter judgment in accordance with the special master's decision if, prior to the expiration of 30 days of the filing, there has been no filing of a motion for review. Vaccine Rule 18 sets forth the provisions on the availability of filings.

the United States Court of Federal Claims a notice in writing choosing to continue or to withdraw the petition if—

> (1) a special master fails to make a decision on such petition within the 240 days prescribed by section 300aa–12(d)(3)(A)(ii) of this title....

42 U.S.C. § 300aa–21(b)(1).

Respondent, in arguing that the special master was mistaken in simply asserting an analogy between the two distinct procedures, asserts that there are several distinguishing factors between a voluntary dismissal and a voluntary withdrawal. Respondent maintains that this court's ability to award fees and costs after a voluntary dismissal does not create authority to do so in a case that has been withdrawn pursuant to § 21(b). In *Martin*, the court explained that "[t]he Court of Federal Claims is a creature of statute, and its power is limited to what Congress has expressly given it." *Martin*, 62 F.3d at 1405 (citing *Beck v. Secretary of HHS*, 924 F.2d 1029, 1036 (Fed.Cir.1991)). Respondent reasons that authority to award fees and costs when a case is voluntarily withdrawn must be found within the Act itself. Petitioners may only be granted relief to the extent that the Act provides for that relief because statutory authorization cannot extend beyond its literal terms. *McGowan v. Secretary of HHS*, 31 Fed.Cl. 734, 740 (1994).

This notion has especially been observed in statutes partially waiving the government's sovereign immunity. In *McGowan*, this court held that the Vaccine Act is a limited waiver of sovereign immunity, and that "[t]he court cannot expand on the waiver of sovereign immunity explicitly stated in the statute." *Id.* (Citing *Broughton Lumber Co. v. Yeutter*, 939 F.2d 1547, 1550 (Fed.Cir.1991)). For this reason, the Supreme Court has held that statutes allowing the award of fees and costs to plaintiffs in cases against the government must be strictly construed in the government's favor. *Ardestani v. INS*, 502 U.S. 129, 137, 112 S.Ct. 515, 520–21, 116 L.Ed.2d 496 (1991). One may further reason that because there is no explicit authorization under § 21(b) for this court to award fees or costs for withdrawn claims, the court may not imply such authority.

Consideration of the counter-argument to this assertion entails an analysis of this court's treatment of the different possible outcomes of a petition filed under the Act and the award of fees and costs in those situations. Previous cases have stated that petitioners may be entitled to fees and costs after voluntarily dismissing their case due to their own failure to obtain adequate medical testimony. *Wells*, 28 Fed.Cl. at 664. In *Wells*, the court said that the language of § 15(e)(1) is plain and unequivocal, making clear Congress's intent to allow an award of attorneys' fees to an unsuccessful petitioner. *Id.* at 662. Further, the court notes that, in comparing the facts in *Wells* with those in the case at bar, it is unlikely that plaintiffs who cannot substantiate their claim with the necessary documentation will successfully be able to show good faith and that their claim is founded on a reasonable basis. The court finds it especially difficult to justify an award to petitioners who voluntarily dismiss their case because they could not submit the documentation required by the Act, and undisputedly never could have submitted such information, while denying such an award to diligent petitioners with an admittedly valid claim who choose to withdraw their petition under § 21(b) after a failure of timely adjudication of that claim. Thus, the court, like the Chief Special Master, declines to judicially legislate a denial of attorneys' fees and costs when the underlying provisions of the Vaccine Act provide for such.

## IV. *Good Faith*

 To bring a successful claim for attorneys' fees and costs in a case where there was no award of compensation, petitioners must show that the petition was brought in good faith and that there was a reasonable basis for the claim. 42 U.S.C. § 300aa–15(e)(1). Respondent argues that petitioners cannot maintain this petition in good faith while pursuing a civil claim in state court. In *Wells*, this court explained that the special master's determination to award attorneys' fees and costs was founded on factual determinations of whether the petition was brought in good faith and founded on a reasonable basis, which required review

governed by the arbitrary and capricious standard. *Wells,* 28 Fed.Cl. at 659. Therefore, this court is bound to review the determination of the special master that petitioners brought this petition in good faith under this standard.

The term "good faith" has not been specifically defined by the courts. However defined, there is no evidence of record that petitioners have acted in violation of this standard. Petitioners are entitled to a presumption of good faith as is the government. Thus, in the absence of direct evidence of bad faith, the special master was justified in presuming good faith. An award of fees and costs to petitioners is consistent with the rationale behind the Act. *Doe,* 19 Cl.Ct. at 443. In *Doe,* it is unlikely that sufficient evidence ever existed to support petitioner's claim, but because there was no direct evidence of bad faith in the record, the court reasoned that it was appropriate to award the requested fees and costs. *Id.* Denying a request for fees and costs in cases where petitioners later realize that they do not have a strong enough case to prevail under the Act and choose to voluntarily dismiss their petition, would create a situation where petitioners are forced to take cases through all of the steps of the program, wasting time and money, simply to obtain a "judgment" so they could be awarded fees and costs. *Wells,* 28 Fed.Cl. at 664.

As previously noted, because the court has no basis for finding that the special master's factually supported decision was arbitrary or capricious, the court relied on the special master's factual finding that petitioners brought their petition in good faith. In this case, the court cannot overturn a decision of the special master regarding petitioners' good faith, particularly when a finding of good faith was based in large part on the fact

that petitioners were required under the Act to bring the petition. *See id.*

In *Lamb v. Secretary of HHS,* 24 Cl.Ct. 255 (1991), although no fees had been requested, the court, relying on Rule 11 of the Rules of the Court of Federal Claims ("RCFC")[5] to assist in this analysis, addressed the possibility of a subsequent request for attorneys' fees. *Id.* at 258. This rule is based on Rule 11 of the Federal Rules of Civil Procedure ("FRCP"), which was amended in 1983 to expand the responsibility of the attorney when signing pleadings or motions. *Id.* at 259 (citing *Coburn Optical Indus., Inc. v. Cilco, Inc.,* 610 F.Supp. 656, 658 (M.D.N.C.1985)). Attorneys now have "an affirmative prefiling obligation ... to inquire as to the applicable facts and law." *Id.* If the court adopted this approach, it would look to whether petitioners failed to reasonably inquire into the merits of the present case. Because respondent had already conceded liability, the merits of the case are hardly questionable. Respondent argues that once petitioners made the decision to pursue their civil action irrespective of the outcome in this court, continuing to pursue this case amounted to bad faith. This is simply not the standard of bad faith articulated by the Vaccine Act or binding precedent. Accordingly, the court must sustain the special master's decision that the action was brought in good faith and affirm his award of attorney's fees and costs.

### CONCLUSION

In conclusion, after careful consideration of the record, arguments, and applicable law, the court affirms the decision of the Chief Special Master to award petitioners $18,-589.84 in attorney's fees and costs. The

5. RCFC 11, entitled "Signing of Pleadings, Motions, and Other Papers; Sanctions," states, in relevant part:

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by or for the attorney of record in the signing attorney's own individual name.... The signature of an attorney or party constitutes a certificate by the attorney or party that the attorney or party has read the pleading,

motion, or other paper; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation....

Clerk of the Court is directed to enter judgment accordingly.