Kenneth L. **WALKER, III** and Michelle **Walker, Parents and Next Friends of Kenneth L. Walker, IV, Petitioners,**

v.

**SECRETARY OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.**

No. 93–529V.

United States Court of Federal Claims.

March 23, 1995.

Michael R. Hugo, Boston, MA, attorney of record for petitioner.

David L. Terzian, Washington, DC, with whom was Asst. Atty. Gen., Frank W. Hunger, for defendant.

## ORDER

HARKINS, Senior Judge.

Petitioners seek review in the United States Court of Federal Claims under the National Childhood Vaccine Injury Compensation Program (the Program) of a special master's decision on entitlement, filed July 6, 1994, that denied compensation.

The Program was established in 1986 as part of the National Childhood Vaccine Injury Act, Pub.L. No. 99–660, tit. III, § 311(a), 100 Stat. 3758. Amendments in 1987, 1988, 1989, 1990, 1991, and 1992, changed substantially procedures applicable to the functions of special masters, and review of decisions of special masters. Provisions governing the Program, as amended, are contained in 42 U.S.C. §§ 300aa–10 through 300aa–34 (1988 & Supp. V 1993).[1] For convenience, further reference to the Program in this order will be to the relevant subsection of "42 U.S.C. § 300aa——."

The procedural history prior to the special master's July 6, 1994, decision is unusual. A petition was filed for compensation under the Program on August 23, 1993, that alleged Kenneth L. Walker, IV (Kenneth) died on September 14, 1991, as a result of a diphtheria-pertussis-tetanus (DPT) vaccination that he received on September 13, 1991. Medical records showed that Kenneth was born a healthy child on July 15, 1991. He remained in good health through the date of his DPT shot on September 13, 1991. The emergency room records show that Kenneth was brought to the Pocono Medical Center on September 14, 1991, "not breathing." The death certificate and autopsy report show that Kenneth died on September 14, 1991; the designated cause of death was Sudden Infant Death Syndrome (SIDS). *See Hellebrand v. Secretary of DHHS*, 999 F.2d 1565 (Fed.Cir.1993).

On August 25, 1993, the special master found the petition was deficient; that the medical records did not support the claim; and ordered the Walkers to supplement the record with an affidavit of a medical expert

---

**1.** The name change on Oct. 29, 1992, from the United States Claims Court to the United States Court of Federal Claims, Title IX, Section 902, of the Federal Courts Administration Act of 1992, Pub.L. No. 102–572, 106 Stat. 4506 (1992), did not have legal consequence in the Program.

that stated an opinion that to a reasonable degree of medical certainty the DPT vaccination caused Kenneth's death. Petitioners then filed additional affidavits of three family members and an affidavit of a medical expert that relied on the representations in the family members' affidavits. The medical expert concluded Kenneth suffered an encephalopathy as a result of the receipt of the DPT vaccine and that the encephalopathy caused the death.

Respondent's December 30, 1993, report recommended there was no entitlement to Program compensation. The bases of respondent's report were that the medical records did not support petitioners' claim, that petitioners' medical expert opinion relied on the representations of the petitioners alone and that the opinion failed to articulate a medical theory causally connecting the vaccination and the injury by proof of a logical sequence of case and effect, supported by reputable medical or scientific explanation.

The special master, after examination of the petition and affidavits, concluded that many of petitioners' allegations were not corroborated in the medical records, and that review of the medical records suggested Kenneth was well before he died. The special master conducted a hearing on April 12, 1994, that was limited to resolving issues of fact.

Petitioners and two other family members testified at the hearing. Respondent offered no evidence.

On June 1, 1994, the special master entered an order establishing the facts of Kenneth's condition following his vaccination, based on the weight he assigned to each witness's testimony at the hearing. The order includes the following determination:

The special master had an ample opportunity to observe the witnesses during thorough direct examination and cross-examination, to question the witnesses himself, and to assess their demeanor at the hearing. Mrs. Walker described very dramatic behavior—including prolonged inconsolable crying; projectile vomiting; and back-arching. See, e.g., Tr. at 16–18, 22–25, 72–75. The special master finds that many portions of Mrs. Walker's testimony were embellished. He gives the testimony little weight. Mrs. Kennedy, Mr. Walker and Mr. Kennedy depicted less sensational events. Their testimony was more even and more reasoned than Mrs. Walker's testimony. The special master gives their testimony greater weight.

The June 1, 1994, order contains nine findings of fact, based on the record as a whole. The order also directed petitioners to consult with their medical expert and obtain a supplemental opinion based upon the findings of fact as found by the special master.

On July 5, 1994, petitioners by motion requested the special master to reconsider the findings. Petitioners informed the special master that their medical expert "advises petitioner that he cannot issue a report supporting petitioners claim in the light of the special master's findings of fact."

In the July 6, 1994, decision on entitlement, petitioners' arguments for reconsideration of the special master's findings of fact were considered and reasons were given for their rejection. Petitioners were unable to supplement the record with a medical expert's opinion, and, accordingly, the special master ruled petitioners were not entitled to Program compensation.

*Discussion*

█ Review of a special master's decision in the Court of Federal Claims is of a very limited nature. This court may not set aside any findings of fact or any conclusion of law of the special master unless such findings of fact or conclusion of law are "found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Section 12(e)(2)(B). In the absence of such findings, this court either must uphold the findings of fact and conclusions of law and sustain the decision, or remand the petition to the special master for further action in accordance with the court's directions. Section 12(e)(2)(A), (C).

The Program is unique in the Judicial Branch; it operates under special procedures. *See Munn v. Secretary of DHHS*, 970 F.2d 863, 868–69 (Fed.Cir.1992). The Program standard of review requires recog-

nition be given to the special masters' expertise in the development of procedures in this novel program.

To prove a Table Injury, petitioners must establish that the "first symptom or manifestation of the onset" of the vaccine injury or condition occur within the time period prescribed in the Vaccine Injury Table. Section 11(c)(1)(C); section 14(a)(I). Petitioners alleged that Kenneth suffered an encephalopathy immediately following his receipt of the DPT vaccination on September 13, 1991, and adduced testimony at an evidentiary hearing in support of that allegation. The special master, however, made findings of fact concerning that testimony from which petitioners' medical expert was unable to conclude that Kenneth suffered an encephalopathy.

█ Petitioners' motion for review objects that the findings of fact in the June 1, 1994, order, with respect to credibility of the witnesses, were arbitrary and capricious. Petitioners identified findings Nos. 3 and 7 in the June 1, 1994, order as episodes on which their expert had based his opinion, and stated the special master's findings removed the basis for his opinion. These findings were:

3.  Kenny was "calm" during the morning on September 14, 1991. *See, e.g.,* Tr. at 142. He sat in his aunt's lap. *See, e.g.,* Tr. at 117. "He wasn't squirming or doing anything. He was just completely relaxed" in his aunt's lap. Tr. at 117–118. The special master was not persuaded by testimony that Kenny was limp, staring, unresponsive or "in a trance." *See, e.g.,* Tr. at 117–122, 129, 134.

7.  After his episode of diarrhea, Kenny rested on his father's chest while his father reclined on a sofa. *See, e.g.,* Tr. at 170, 186. Kenny appeared "peaceful" and "very content and quiet and calm." Tr. at 124, 186. Again, the special master was not persuaded by testimony that Kenny was limp or staring. *See, e.g.,* Tr. at 124, 171–172.

In resolving the factual disputes that were central to the issue of whether Kenneth suffered an encephalopathy, the special master reduced the lay testimony to its essence and concluded that, as a whole, it did not provide

sufficient evidence to prove that Kenneth suffered an encephalopathy. The testimony to which the special master gave greater weight nevertheless was insufficient to provide probative evidence that Kenneth suffered an encephalopathy following vaccination. This was carefully detailed in the special master's analysis of the testimony.

It is clear that determining the credibility of the evidence is the special province of the trier of fact. *Aea v. United States,* 26 Cl.Ct. 878, 882 (1992) (quoting *Inwood Lab., Inc. v. Ives Lab., Inc.,* 456 U.S. 844, 856, 102 S.Ct. 2182, 2189–90, 72 L.Ed.2d 606 (1992)), *aff'd,* 6 F.3d 787 (Fed.Cir.1993); *Hagmeyer v. Dep't of Treasury,* 757 F.2d 1281, 1284 (Fed.Cir. 1985). Credibility determinations are virtually unreviewable. *Hambsch v. Dep't of Treasury,* 796 F.2d 430, 436 (Fed.Cir.1986); *Griessenauer v. Dep't of Energy,* 754 F.2d 361, 364 (Fed.Cir.1985). This court has embraced that maxim. *Richardson v. Secretary of DHHS,* 23 Cl.Ct. 674, 678 (1991); *Shepard v. Secretary of DHHS,* 25 Cl.Ct. 326, 331 (1992).

In this case, the special master plainly articulated a rational basis for his decision and reduced the testimony to its critical elements. Regardless of whether one could have reached a different conclusion about the substance of the testimony, it cannot be said that the special master's determinations were arbitrary and capricious.

The contemporaneous medical records, all of which were offered by petitioners as exhibits to their petition, fail to show anything in Kenneth's history following vaccination that can be construed as evidence of an encephalopathy. Dr. Gulli's note dated September 17, 1991, stated as follows:

Kenneth was found dead in his portacrib on 9/14/91 in Penn where family was visiting. He had been fine up to that point. I spoke with pathologist who did autopsy Rx: SIDS. Today, I met with the family to discuss SIDS and also told that according to researchers no linkage of SIDS to DPT shot has been seen.

Contrary to petitioners' assertions, there is no support in the medical records that Kenneth suffered any post-vaccination illnesses.

Petitioners raise an issue as to the consideration of incorrect information contained in

the record. Petitioners obtained an affidavit from Dr. Gulli stating that Dr. Gulli had no knowledge of Kenneth's health from the time he left her office to the time of his demise. The special master did not alter his decision in light of this information. There is no error here for two reasons. First, the special master stated that "he did not base any of his findings of fact upon" this matter. Second, the point at which the special master cites to the record regarding Dr. Gulli's opinion does not state that Dr. Gulli said that Kenneth was not ill before death. Rather, the hospital report states that Kenneth was "[s]een by pediatrician yesterday" and there were "[n]o previous illnesses." At no time does the special master indicate that he thought Dr. Gulli had knowledge of Kenneth's condition after he left her office. Thus, this "correction" in the record has little or no significance.

On the basis of the record in this case, and on the foregoing discussion, petitioners have not shown that the special master's findings of fact and conclusions of law are arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law. Accordingly, the special master's findings of fact and conclusions of law are upheld and the decision on entitlement is sustained. The Clerk is directed to enter judgment in accordance with the decision of the special master.